Peter R. Afrasiabi (Bar No. 193336)
Email: pafrasiabi@onellp.com
John Tehranian (Bar No. 211616)
Email: jtehranian@onellp.com
**ONE LLP**
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:    (949) 258-5081

Attorneys for Plaintiff,
Harold Lloyd Entertainment, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD LLOYD ENTERTAINMENT, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MOMENT FACTORY ONE, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  CV15-01556 JAK (MRWx)<br>**COMPLAINT FOR:**<br>1) **COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**<br>2) **FALSE DESIGNATION OF ORIGIN/FALSE ENDORSEMENT (15 U.S.C. § 1125(A))**<br>3) **CALIFORNIA STATUTORY UNFAIR COMPETITION (CAL. B&P CODE § 17200)**<br>4) **CALIFORNIA COMMON LAW UNFAIR COMPETITION**<br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

HAROLD LLOYD ENTERTAINMENT, INC. ("HLE"), by and through their attorneys of record, complains against MOMENT FACTORY ONE, INC. ("Moment Factory") and DOES 1 through 10, (collectively, "Defendants") as follows:

## JURISDICTION AND VENUE

1. This is a civil action seeking damages and injunctive relief against Defendants Moment Factory and DOES 1 through 10 for willful copyright infringement in violation of the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.,* false designation of origin/false endorsement in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; and its acts of unfair competition, in violation of California Bus. & Prof. Code § 17200 and California's common law.

2. This Court has subject matter jurisdiction under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.*, 15 U.S.C. § 1121 (Lanham Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 1338(a) (copyright) & 1338(b) (unfair competition/trademark). This Court possesses supplemental jurisdiction over the state statutory and common law unfair competition claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(a) in that the claim arises in this Judicial District, the Defendants may be found and transact business in this Judicial District, and the injury suffered by Plaintiff took place in this Judicial District. Defendants are subject to the general and specific personal jurisdiction of this Court because of their contacts with the State of California.

## PARTIES

4. Plaintiff HLE is a corporation formed under the laws of the state of California with its principal place of business at 11433 Berwick St., Los Angeles, California 90049.

5. Plaintiff is informed and believes and, upon such, alleges that Defendant Moment Factory is a corporation organized under the laws of the state of Delaware with corporate offices located 1529 Wellesley Avenue, Los Angeles, California 90025.

6. The true names or capacities, whether individual, corporate or otherwise, of the Defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will ask leave of Court to amend this Complaint and insert the true names and capacities of said Defendants when the same have been ascertained.

## FACTS

*Harold Lloyd and the Iconic Clock Scene in "Safety Last!"*

7. "Safety Last!" is one of the most successful and critically lauded movies in Hollywood history. The movie has repeatedly made it on the American Film Institute's list of the top one hundred movies of all-time and it was recently re-released as part of the acclaimed Criterion Collection. The movie also cemented the status of its star, Harold Lloyd, as one of the most famous leading men and comedians of the Hollywood's Golden Era.

8. The denouement of "Safety Last!" features one of the most iconic images in cinema. It is a scene that is veritably world famous: Harold Lloyd, bespeckled with black rim glasses and donning a sharp, close-cropped black suit and contrasting rimmed hat, dangling perilously from the hands of a giant clock on the façade of multi-story stone building. Attached, as Exhibit A, is a true and correct still from the iconic scene (the "Clock Scene") from "Safety Last!"

9. HLE is the owner of all rights, title and interest in the copyrights to the movie "Safety Last!" and all derivatives thereof, which substantially consist of material wholly original with Plaintiff and which is copyright subject matter under the laws of the United States. HLE has complied in all respects with the Copyright Act and all of the laws of the United States governing copyrights. "Safety Last!" has been registered with the United States Copyright Office, U.S. Copyright Registration No. LU18608, and properly renewed, U.S. Copyright Renewal No. R59385.

10. For good and valuable consideration, HLE has selectively licensed the iconic Clock Scene and derivatives thereof. The 1985 blockbuster "Back to the Future" licensed the rights to create a derivative version of the Clock Scene when it obtained permission from HLE's predecessor-in-interest to feature a scene where star Christopher Lloyd dangled perilously from the hands of a giant clock. More recently, Martin Scorcese's critically acclaimed children's movie "Hugo" licensed the rights to create a derivative version of the Clock Scene when it obtained permission to feature a scene where star Asa Butterfield dangled perilously from the hands of a giant clock.

*The "Time Tower" Installation at LAX,*

*the Defendants and Their Willful Infringing Activity*

11. Upon information and belief, Defendant Moment Factory was commissioned as the "Executive Content Producer" to create a series of seven installations at the new Tom Bradley International Terminal at Los Angeles International Airport ("LAX"). One of these installations, the so-called Time Tower, forms, according to Defendant Moment Factory's own promotional materials, the "centerpiece" of the new Terminal.

12. As Defendant Moment Factory claims in its promotional materials, the Time Tower is a "tribute to the silent era" that serves a distinctly commercial purpose—helping to "brand the terminal as a destination." Unfortunately, however, the Time Tower is also a willful infringement of copyright, trademark and unfair competition law.

13. In creating, installing and commercially exploiting the Time Tower, which features a suited and hatted man racing to the top of a high-rise building with a large clock on its face where, in the denouement, he precariously dangles from one of the giant hands of said clock and, ultimately, finds himself in the arms of his waiting girlfriend who kisses him, Defendants have directly and willfully infringe on the copyrights of HLE. Specifically, Defendants' Time Tower recreates the iconic Clock Scene "Safety Last!" by reproducing, public displaying and creating derivative versions thereof without authorization of HLE.

14. Indeed, production stills from Defendants' reveal the blatant and willful infringing conduct of Moment Factory, both in the process of creating the Time Tower and in the final version of the Time Tower that continues to be publicly displayed at LAX's International Terminal. Specifically, production stills for the Time Tower created by Moment Factory illustrator and storyboarder Daniel Pocetti, working in collaboration with Moment Factory Art Directors Marie Belzil and Marie-Eve Meilleur, make indisputably clear that the Time Tower was directly appropriated from the Clock Scene from "Safety Last!" A true and correct copy of an exemplar of said production stills are attached as Exhibit B.

15. In those stills, Moment Factory explicitly and directly refers to the Time Tower scene at issue as "***the Harold Lloyd tower theme***," (emphasis added) thereby making both the infringing origin of the Time Tower clear and, through such statements, expressly and explicitly deceiving or confusing consumers into believing that Defendant's products and/or services are affiliated with Harold Lloyd and HLE, are sponsored or approved of by Harold Lloyd and HLE, or otherwise associated with or authorized by Harold Lloyd and HLE, and/or that Harold Lloyd/HLE's products and/or services associated with the Harold Lloyd/Clock Scene Marks are affiliated with Defendant, are sponsored or approved of by Defendant, or otherwise associated with, authorized by or endorsed by Defendant.

16. In those stills, Moment Factory also reproduces, distributes and publicly displays unauthorized renditions of the famous Clock Scene from "Safety Last!" A side by side comparison of a still from the famous Clock Scene from "Safety Last!" and one of Moment Factory's production stills—attached as Exhibit C—makes the infringement unmistakable. For example, a man appearing as and dressed identically to Harold Lloyd (bespeckled with wire-rimmed glasses, donning a sharp, close-cropped dark suit and dark hat with a wide and light brim) is dangling precariously from the hands of a giant clock on a multi-story stone building that is rendered identically to the one in "Safety Last!" to even the most whimsical of details: three dark elevated rings around the circumference of the

4

**COMPLAINT**

1  clock, roman numerals, identically stylized clock hands and the time set on both clocks is
2  set at 2:41.

3      17.    As a result, it is not surprising that the current rendition of the Time Tower at
4  LAX continues to infringe HLE's rights.  As any observer would immediately notice, the
5  Time Tower's clock scene is a direct appropriation of the iconic Clock Scene from "Safety
6  Last!" and is substantially, if not strikingly similar, thereto.  Inter alia, the lead character in
7  Time Tower's Clock bears a striking resemblance to Mr. Lloyd and his distinctive outfit in
8  the movie (donning a sharp, close-cropped black suit and rimmed hat, dangling perilously
9  from the hands of a giant clock).  More fundamentally, a basic comparison of the iconic
10 Clock Scene from "Safety Last!" and Moment Factory's "rendition," exemplars of which
11 are attached as Exhibit D, reflects the fundamental and striking overall similarities:  both
12 feature remarkably similar looking men donning sharp, close-cropped black suits and
13 contrasting rimmed hats, scaling, stone by stone (often using his swinging legs as leverage
14 to pull him up the stones) the façade of a multi-story building with a foolish, foppish and
15 frustrated police officer wielding a baton in hot pursuit, and the character ultimately
16 dangling perilously from the hands of a giant clock on the façade of the building until he is
17 rescued with the help of some make-shift rope and finds himself, near the top of the
18 building, in the arms of his waiting girlfriend, dressed in a chiffon dress and hat, who takes
19 him in her arms and greets him with a kiss.

20     18.    Indeed, Moment Factory's intent to mimic the iconic Lloyd Clock Scene and
21 commercially misappropriate the intellectual property rights of HLE is made manifest by
22 the specific stylistic and expressive choices of the Time Tower—stylistic and expressive
23 choices which serve no purpose other than to trade on HLE goodwill and copyrighted
24 materials.  To wit, inter alia and only by way of example:

- There is no reason—other than to mimic the iconic Lloyd Clock Scene and trade on HLE and Lloyd's goodwill—for the denouement of the Time Tower sequence to feature a Lloyd doppelganger, dressed in a sharp, close-cropped black suit and a contrasting rimmed hat a man, dangling precariously from the

    hands of a giant clock with large blocky roman numerals on the façade a multi-story stepped stone building;

- There is no reason—other than to mimic the iconic Lloyd Clock Scene and trade on HLE and Lloyd's goodwill—for the Time Tower sequence to be filmed entirely in a sepia-tone black-and-white, feature a vaudevillian score directly reminiscent of the silent-era film and take place in an urban high-rise meant to mimic the look, feel and sound of "Safety Last!";
- There is no reason—other than to mimic the iconic Lloyd Clock Scene and trade on HLE and Lloyd's goodwill—for the Lloyd doppelganger to be seen scaling a multi-story building with a stepped stone façade, scaling the building stone by stone and often using his swinging legs as leverage to pull him up the stones;
- There is no reason—other than to mimic the iconic Lloyd Clock Scene and trade on HLE and Lloyd's goodwill—for the Lloyd doppelganger to conduct his scaling of the building with a foolish, foppish and frustrated police officer wielding a baton in hot pursuit and to be pulled up the building with the help of some make-shift rope; and
- There is no reason—other than to mimic the iconic Lloyd Clock Scene and trade on HLE and Lloyd's goodwill—for the scene to end with the Lloyd doppelganger finding himself near the top of the building in the arms of his waiting girlfriend (dressed in a chiffon-like dress and floppy hat) who takes him in her arms and greets him with a kiss.

19. With its self-professed "reputation as an industry leader," as a "new media and entertainment studio specialized in the conception and production of multimedia environment" and as the creator of installations around the world for such clients as Disney, Microsoft, Sony, Cirque Du Soleil, Nine Inch Nails and Madonna, Defendant Moment Factory is a sophisticated corporation with full knowledge of the strictures of intellectual property law and the need to secure proper licenses for the use thereof.

6
**COMPLAINT**

20. Defendants possess no valid permission, consent, or license to reproduce, publicly display, distribute or make any other the movie, its stills or its iconic imagery, or any derivatives thereof. As such, Defendants' unauthorized exploitation violates HLE's exclusive rights, as secured, inter alia, under the federal Copyright Act, 17 U.S.C. § 106, the federal Lanham Act, 15 U.S.C. § 1125, and constitutes wholesale copyright and trademark infringement.

21. It is unknown how long these alleged violations have been occurring. However, said violation of HLE's exclusive rights under, inter alia, 17 U.S.C. § 106 and 15 U.S.C. § 1125(a) are on-going in wanton and in willful disregard of HLE's legal rights.

22. Among other things, HLE and its representatives have been approached by numerous members of the consuming public who, after seeing the Time Tower at LAX's International Terminal, have been expressly and explicitly deceived and confused into believing that Defendant's products and/or services are affiliated with Harold Lloyd and HLE, are sponsored or approved of by Harold Lloyd and HLE, or otherwise associated with or authorized by Harold Lloyd and HLE, and/or that Harold Lloyd/HLE's products and/or services associated with the Harold Lloyd/Clock Scene Marks are affiliated with Defendant, are sponsored or approved of by Defendant, or otherwise associated with, authorized by or endorsed by Defendant.

23. HLE had attempted to resolve this case short of litigation. After months of efforts on that front, however, Defendants and their representatives had gone completely silent and failed to respond to Plaintiff's continuing inquiries and attempts to settle this matter. Indeed, they have continued to infringe HLE's intellectual property rights despite being put on specific notice thereof and have vigorously denied any liability whatsoever.

24. Thus, although every possible effort has been made to avoid litigation, Defendants have given Plaintiff no alternative but to file suit to protect its basic intellectual property rights from willful infringement.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement, 17 U.S.C. § 501)

25. Plaintiff HLE incorporates here by reference the allegations in paragraphs 1 through 20 above.

26. HLE is the owner of all rights, title and interest in the copyrights to the movie "Safety Last!" (the "Work") and all derivatives thereof, and said Work is timely registered with the Copyright Office as noted *supra*.

27. Defendants have directly, vicariously and/or contributorily infringed, and unless enjoined, will continue to infringe HLE's copyrights by willfully reproducing, displaying, distributing, and creating derivative versions thereof, of the Work in violation of 17 U.S.C. § 501 *et seq.*

28. All of the Defendant's acts are and were performed without the permission, license or consent of HLE.

29. The said wrongful acts of Defendants have caused, and are causing, great injury to HLE, which damage cannot be accurately computed, and unless this Court restrains Defendants from further commission of said acts, HLE will suffer irreparable injury, for all of which it is without an adequate remedy at law. Accordingly, HLE seeks a declaration that Defendants are infringing HLE's copyrights and an order under 17 U.S.C. § 502 enjoining Defendants from any further infringement of HLE's copyrights.

30. As a result of the acts of Defendants alleged herein, HLE has suffered and is suffering substantial damage to its business in the form of diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of its rights, all of which are not yet fully ascertainable.

## SECOND CLAIM FOR RELIEF

### (False Designation of Origin/False Endorsement, 15 U.S.C. § 1125(a))

27. Plaintiff HLE incorporates here by reference the allegations in paragraphs 1 through 26 above.

28.     HLE is the owner of all rights, title and interest to the intellectual property rights embodied in "Safety Last!" and the career works of actor Harold Lloyd.  HLE therefore own all rights to Harold Lloyd's distinctive performative attributes embodied in the Clock Scene and related work and Harold Lloyd's name (collectively, the "Harold Lloyd/Clock Scene Marks"), and HLE and its predecessor in interest, Harold Lloyd, have used the Clock Scene mark and related marks, which include but are not limited to a logo featuring an image of the distinctive Clock Scene to designate the source or origin of products and services, continuously in interstate commerce on and in, inter alia, motion pictures and in association with other related products and services, including but not limited to automobiles, computers, clocks, clothing, mugs, hats, lunch boxes, and ornaments, since at least 1923 and, as such, have obtain and own trademark rights therein.

29.     The Clock Scene embodies the distinctive performative attributes for which Harold Lloyd became and continues to be known and upon which his international reputation is based.  HLE and its predecessor in interest, Harold Lloyd, built up and own valuable goodwill which is symbolized by the distinctive performative attributes embodied in the Clock Scene and related work.  The public has come to associate these distinctive performative attributes with Harold Lloyd and his successors in interest and these distinctive performance attributes and the Harold Lloyd/Clock Scene Marks are inherently distinctive and/or have acquired secondary meaning.

30.     Defendant has infringed Plaintiff's Harold Lloyd/Clock Scene Marks by using confusingly similar marks in commerce on competing and/or related products and/or services, including but not limited to the audiovisual/motion picture display at LAX known as the Time Tower, as described *supra*. Said unauthorized imitation of Harold Lloyd's distinctive performative attributes in the Clock Scene and his name, whose attributes constitute, inter alia, a commercial trademark, amounts to a form of false endorsement actionable under 15 U.S.C. § 1125(a).

31.     Members of the consuming public are likely to mistakenly believe that the Time Tower, LAX and/or Moment Factory is in some way affiliated or associated with

and/or sponsored or sanctioned by Harold Lloyd and HLE and/or that it has been authorized by Harold Lloyd and HLE to use its marks, thereby causing likely consumer confusion as to the source or origin of the goods and services being offered and resulting in false designation of origin and false endorsement. *See, e.g.*, *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395 (9th Cir. 1992) (finding that a Samsung advertisement featuring a robot dressed in a gown and turning letters could false endorsement and violate the trademark rights of Vanna White); *Wendt v. Host Intern., Inc.*, 197 F.3d 1284 (9th Cir. 1999) (finding figures at the end of a bar in a chain of themed pubs constituted false endorsement and violated the trademark rights of actors George Wendt and John Ratzinger from the television show *Cheers*); Waits v. Frito-Lay, Inc., 978 F.2d 1093 (9th Cir. 1992) (recognizing a false endorsement claim under the Lanham Act 'for the unauthorized imitation of [an individual's] distinctive attributes, where those attributes amount to an unregistered commercial trademark.').

32. Defendant's use of the Harold Lloyd/Clock Scene Marks in connection with its products and/or services constitutes a use in interstate commerce that is likely to cause forward and/or reverse confusion and mistake and to deceive consumers as to the source or origin of Defendant's products. Defendant's use has a tendency to deceive or confuse consumers and, indeed, does expressly and explicitly deceive or confuse consumers into believing that Defendant's products and/or services are affiliated with Harold Lloyd and HLE, are sponsored or approved of by Harold Lloyd and HLE, or otherwise associated with or authorized by Harold Lloyd and HLE, and/or that Harold Lloyd/HLE's products and/or services associated with the Harold Lloyd/Clock Scene Marks are affiliated with Defendant, are sponsored or approved of by Defendant, or otherwise associated with, authorized by or endorsed by Defendant.

33. At no time did Defendant have authorization, legal rights, or consent to engage in such activities in disregard of Plaintiff's rights in Harold Lloyd and the Clock Scene Marks.

34. By engaging in the activities described above, Defendants have made and are making false, deceptive and misleading statements constituting unfair competition, false representations, false designation of origin, false endorsement and false advertising made in connection with goods and services distributed in interstate commerce in violation, directly, contributorily or vicariously, of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

35. On information and belief, Defendant's actions complained of herein were deliberate, intentional and willful, and Defendant knew or should have known that its acts were and are wrongful and that they distributed and sold infringing goods, namely products and services marketed bearing and displaying the HLE Clock Scene and derivatives thereof, that infringe on Plaintiff's interests. In the process, Defendant acted in reckless disregard of Plaintiff's intellectual property rights.

36. As a proximate result of Defendant's advertising, promotion, sale, offering for sale, and distribution of these goods and services, Plaintiff has been damaged and deprived of sales, including but not limited to licensing opportunities, and will continue to be deprived of said opportunities.

37. Plaintiff has been deprived and will continue to be deprived of the value of its trademarks as a commercial asset.

38. Indeed, the advertising, promotion, sale, offering for sale, and distribution by Defendant of these infringing goods and services is likely to cause forward and/or reverse confusion and mistake and to deceive purchasers and does in fact cause forward and/or reverse confusion, mistake, and deception.

39. In addition, as a proximate result of the unfair advantage accruing to Defendant's businesses from deceptively trading on Plaintiff's mark and its goodwill and consumer recognition, Defendant has made substantial sales and profits in amounts to be established according to proof.

40. Defendant's acts have caused and, unless restrained by this Court, will continue to cause Plaintiff and the public to suffer great and irreparable damage, for which no adequate remedy at law exists, and injury through, inter alia: (a) a likelihood of forward

and/or reverse confusion, mistake, and deception among the relevant purchasing public and trade as to the true source, origin, sponsorship, and affiliation of the Defendant and its infringing goods and/or Plaintiff's services and products associated with Harold Lloyd and HLE's Clock Scene; and (b) the loss of Plaintiff's valuable goodwill and business reputation symbolized by Harold Lloyd and the HLE Clock Scene.

41. On information and belief, Plaintiff alleges that Defendant's acts were committed, and continue to be committed, with actual notice of Plaintiff's exclusive rights and with an intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Plaintiff and its products. Pursuant to 15 U.S.C. § 1117, Plaintiff is, therefore, entitled to recover three times their actual damages or three times Defendant's profits, whichever is greater, together with Plaintiff's attorneys' fees, and Plaintiff may elect, at time of trial and in the alternative, statutory damages up to the maximum extent permitted under the Lanham Act.

42. In addition, pursuant to 15 U.S.C. § 1118, Plaintiff is entitled to an order requiring destruction of all infringing materials in Defendant's possession.

43. Defendants' acts of unfair competition, false designation of origin/endorsement/advertising have caused and are causing great and irreparable injury to HLE and its Harold Lloyd/Clock Scene marks and to the products and goodwill represented thereby, in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury, leaving HLE with no adequate remedy at law.

44. By reason of the foregoing, HLE Techs is entitled to injunctive relief against Defendant, restraining further acts of unfair competition, false designation of origin, false endorsement and false advertising, and to recover attorneys' fees and any damages proven to have been caused by reason of Defendant's aforesaid acts of unfair competition, false designation of origin, false endorsement and false advertising.

## THIRD CLAIM FOR RELIEF

(**California Statutory Unfair Competition, Cal. B&P Code § 17200**)

45. Plaintiff re-alleges and incorporates herein by reference every allegation contained in paragraphs 1 through 44.

46. Defendant's conduct constitutes unlawful, unfair and fraudulent business practices and unfair competition in violation of California common law due to the unlawful acts outlined above, which includes but is not limited to the Lanham Act violations as outlined above.

47. Because Defendant has engaged in false designation of origin and false endorsement, as noted *supra*, Defendants have engaged in unlawful business practices in direct, contributory and/or vicarious violation of § 17200 of California's Business & Professions Code.

48. By engaging in false designation of origin and false endorsement, as noted supra, Defendants have gained an unfair business advantage by conferring upon themselves the benefits of the goodwill Plaintiff fostered over years of brand development.

49. These actions also fundamentally undermine the value of Plaintiff's trademarks as a business asset.

50. Plaintiff is therefore entitled to appropriate damages according to proof, including but not limited to restitution, and appropriate injunctive relief to protect against any ongoing and further injury caused by Defendant's unlawful and unfair business practices.

## FOURTH CLAIM FOR RELIEF

(**California Common Law Unfair Competition**)

51. Plaintiff re-alleges and incorporates herein by reference every allegation contained in paragraphs 1 through 50.

52. Defendant's conduct, as alleged herein, is unfair and unlawful.

53. Defendant's scheme directly, contributorily and/or vicariously violates California's common law unfair competition principles, which are synonymous with the Lanham Act's provisions, thereby entitling Plaintiff to damages.

54. Defendant's acts alleged herein have caused Plaintiff to lose profits and caused additional damage to Plaintiff's reputation and goodwill. The precise amount of Plaintiff's damages is presently unknown but will be established according to proof.

55. Plaintiff is informed and believes and thereon alleges that as a direct and proximate result of Defendant's wrongful conduct as described above, Defendants have gained revenue and profits.

56. Plaintiff has no adequate remedy at law for the injury that will be caused by Defendant's acts of unfair competition and/or fraudulent business practices. Accordingly, Plaintiff is entitled to preliminary and permanent injunctions restraining Defendant, its officers, agents, and employees, and all persons acting in concert with it, from further engaging in acts of unfair competition against Plaintiff and its intellectual property.

57. In connection with the matters alleged herein, Defendant has been guilty of fraud, oppression and malice and HLE is therefore entitled to punitive/exemplary damages in an amount to be proven at trial, which punitive/exemplary damages are available under California's unfair competition tort that mirrors the elements of a federal Lanham Act claim.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1. For an order permanently enjoining Defendant, its officers, agents, servants, employees, representatives, and attorneys, and all persons in active concert or participation with them, from (a) designing, copying, reproducing, displaying, promoting, advertising, distributing, or selling, or engaging in any other form of dealing or transaction in, any and all products and services (including advertising and promotional materials, print media, signs, internet web sites, or any other media related

thereto), either now known or hereafter devised, that infringe, contributorily infringe, vicariously infringe, or induce infringement of Plaintiff's copyrights in and to the Work; (b) representing or implying to the consuming public, or misleading the consuming public into believing, that Defendant is affiliated with, approved by, or sponsored by HLE; (c) engaging in any acts which deceive the public into believing that Defendant is a part of HLE; (d) using HLE's trademarks, trade dress or any colorable imitation of HLE's marks, trade dress logos, works or designs, in any manner; (e) doing any other act or thing to create a false designation of origin, affiliation or sponsorship as between Defendant and Plaintiff; or (f) aiding, abetting, encouraging or inducing another to do any of the acts enjoined..

2.  For the entry of a seizure order directing the U.S. Marshall to seize and impound all items possessed, owned or under the control of Defendant, its officers, agents, servants, employees, representatives and attorneys, and all persons in active concert or participation with them, which infringe upon HLE's copyrights, including but not limited to any and all products, installations, broadcasting materials, advertising materials, print media, signs, Internet web sites, domain names, computer hard drives, servers or any other media, either now known or hereafter devised, bearing any design or mark which infringe, contributorily infringe, or vicariously infringe upon HLE's copyrights in the Work as well as all business records related thereto, including, but not limited to, lists of advertisers, clients, manufacturers, suppliers, customers, viewers, distributors, invoices, catalogs, and the like, or infringe upon Plaintiff's trademarks or trade dress and unfairly compete with HLE.

3.  For actual damages.

4.  For disgorgement of all profits derived by Defendant from its intentional and willful acts of copyright infringement, trademark, service mark and trade dress infringement, false designation of origin/false endorsement, and unfair competition, and to reimburse Plaintiff HLE for all damages suffered by reasons of Defendant's acts, and

that such damages be trebled pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117.

5. For an accounting of all profits, income, receipts or other benefit derived by Defendant from its acts of unfair, unlawful and fraudulent business practices and for its reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringe upon HLE's copyrights, trademarks and trade dress.

6. For statutory damages for copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§ 504(a)(2) & (c).

7. For injunctive relief ordering Defendants to cease any and all further acts of infringement of the Lanham Act and/or unfair competition.

8. For punitive and exemplary damages.

9. For costs and interest.

10. For reasonable attorneys' fees.

11. For any such other and further relief as the Court may deem just and appropriate, including but not limited to pre- and post-judgment interest.

Dated: May 6, 2015          **ONE LLP**

By: /s/ John Tehranian
John Tehranian
Attorneys for Plaintiff,
Harold Lloyd Entertainment, Inc.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims and all issues properly triable thereby.

Dated: May 6, 2015                          **ONE LLP**

                                            By: /s/ John Tehranian
                                                John Tehranian
                                                Attorneys for Plaintiff,
                                                Harold Lloyd Entertainment, Inc.