UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (DKT. 20)

## I. Introduction

Plaintiff Harold Lloyd Entertainment ("HLE") brought this action against Moment Factory One, Inc. ("Moment") and Does 1-10 (collectively, "Defendants"). Dkt. 1. The operative pleading is the First Amended Complaint ("FAC"). Dkt. 18. It alleges that Plaintiff holds the copyright to the 1923 silent film *Safety Last*. FAC, Dkt. 18 ¶ 9. The film's closing scene features its principal character, played by Harold Lloyd, dangling from the hands of a large clock ("Clock Scene"). *Id.* ¶ 8. Plaintiff alleges that Defendant infringed its copyright in creating a multimedia work, which is called the "Time Tower," a portion of which features a video of a man dangling from the hands of a large clock. *Id.* ¶¶ 11-13. The FAC advances four causes of action: (i) copyright infringement in violation of the United States Copyright Act, 17 U.S.C. § 501; (ii) false designation of origin/false endorsement in violation of the Lanham Act, 15 U.S.C. § 1125(a); (iii) unfair competition in violation of California Business and Professions Code ("Cal. Bus. & Prof. Code") § 17200; and (iv) unfair competition in violation of California common law. *Id.* ¶ 1.

Defendant filed a motion to dismiss the FAC ("Motion"). Dkt. 20. Plaintiff filed an opposition to the Motion, Dkt. 35, and Defendant filed a reply. Dkt. 41.

A hearing on the Motion was held on September 14, 2015, and the matter was taken under submission. Dkt. 45. For the reasons stated in this Order, the Motion to Dismiss is **GRANTED** as to the second, third, and fourth causes of action, and **DENIED** as to the first cause of action.

## II. Summaries of the Works at Issue

Pursuant to Fed. R. Evid. 201, judicial notice is taken of both *Safety Last* and the video portion of Time Tower that is at issue. *See* Request for Judicial Notice in Support of Defendant's Motion to Dismiss, Dkt. 20-3 Ex. A (*Safety Last*); Ex. B (Time Tower video). It is appropriate to consider the content of the films. *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir.1945) ("There is ample authority for holding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.)[1]

    A.    *Safety Last*

*Safety Last* is a silent film that is 73 minutes in length; it was released in 1923. FAC, Dkt. 18 ¶ 9. As noted, HLE holds the copyright to the film, which has been registered with the United States Copyright Office. *Id.* The FAC alleges that the film is "one of the most successful and critically lauded movies in Hollywood history," has "repeatedly made it on the American Film Institute's list of the top one hundred movies of all-time," and "cemented the status of its star, Harold Lloyd, as one of the most famous leading men and comedians of the Hollywood's Golden Era." *Id.* ¶ 7.

In the film, Harold Lloyd plays a character, who has Lloyd's name, and who leaves Great Bend, Kansas to travel by train to a "big city." He leaves his girlfriend, Mildred, in Great Bend, promising to have her join him in the city once he can finds work and can support her. Lloyd moves into an apartment with a second male character, whose name is Bill. Lloyd takes a job as a clerk in a large department store. After work one day, Lloyd runs into an old friend from Great Bend, who is now a policeman. Lloyd later tries to impress Bill by telling him that he has great influence with the police. Lloyd convinces Bill to push a policeman, whom Lloyd believed to be his friend. But when Bill does so and the policeman falls, Lloyd realizes he mistook the officer for his friend. Bill runs away and the policeman pursues him. Bill evades arrest by climbing up the side of a building. The policeman vows to arrest Bill the next time he sees him.

Since arriving in the city, Lloyd has been sending Mildred expensive presents that he can barely afford. This leads her to conclude that he has become sufficiently successful so that he can support a family. Therefore, she travels by train to join him in the city. While he is at work, Lloyd hears the manager of the store say that he will pay $1000 to anyone who could attract a substantial number of potential customers to the store. Lloyd remembers Bill's talent to climb buildings and suggests to the manager to have a man climb the outside of the tall building in which the store is located. The manager approves the idea and the climb. It is scheduled for the following day, and is publicized. When the policeman whom Bill had pushed and eluded sees a newspaper story about the event, he suspects that Bill will be the climber and plans to attend the event in order to arrest Bill.

On the day of the event, a large crowd gathers outside the building. The policeman is also there, and remains notwithstanding Lloyd's efforts to get him to leave. When it is the announced time for the planned

---

[1] In general, a motion to dismiss is to be decided based solely on the content of the operative complaint. There are exceptions for documents that are attached to, or referenced in the complaint or that may otherwise be subject to judicial notice. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2001). Under the doctrine of incorporation by reference, documents whose contents are alleged in the complaint may be considered so long as the complaint "necessarily relies" on them, their authenticity is not contested, and they are relevant to the claims and defenses at issue. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). One purpose of this rule is to permit efficient judicial proceedings so that the legal basis for claims can be assessed where plaintiffs may have "deliberately omit[ed] documents upon which their claims are based." *Swartz*, 476 F.3d at 763 (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

climb, in order to avoid his arrest, Bill suggests that Lloyd take his place and climb the first story so that the policeman will not pursue the climber. Once Lloyd reaches the first floor area, Bill will switch clothing with him and take over as the climber for the remainder of the ascent. This plan is adopted.

After Lloyd starts his climb, the policeman spots Bill outside the building. After Bill enters the building, the policeman chases him. Bill proceeds to the location where he planned to switch places with Lloyd. But, the policeman appears and chases Bill away. Bill tells Lloyd that he will meet him on the next floor. This pattern repeats, as the policeman arrives at each floor as he continues to pursue Bill, preventing him from changing places with Lloyd. Lloyd continues to climb to a location well above the street. Ultimately, because he is about to fall off the building, he grabs the hands of a large clock that is attached to the exterior of the building. Lloyd dangles from the clock for approximately one minute. At this point, Bill throws Lloyd a rope and helps him climb safely. Ultimately, Lloyd climbs to the top of the building, thereby earing the $1000 prize. Mildred is waiting for him on the rooftop. After he arrives, they embrace and kiss.

The climb scene lasts for approximately seven minutes; Lloyd dangles from the clock for approximately one minute. The FAC alleges that this scene is one of the "most iconic images" in cinema: "Harold Lloyd, bespeckled with black rim glasses and donning a sharp, close-cropped black suit and contrasting rimmed hat, dangling perilously from the hands of a giant clock on the façade of [sic] multi-story stone building." *Id.* ¶ 8. HLE has licensed the Clock Scene for use in other motion pictures on at least two prior occasions. *Id.* ¶ 10. The first was *Back to the Future*; the second was *Hugo.* Each included a scene in which a character dangled from the hands of large clock. *Id.*

      B.      The Time Tower Video

Moment is a "new media and entertainment studio specializing in the conception and production of multimedia environment[s]." *Id.* ¶ 19. Its clients have included the Walt Disney Co., Microsoft, Sony and Cirque Du Soleil. *Id.* In 2014, the City of Los Angeles commissioned Moment to create a series of "installations" to be featured at the newly remodeled Tom Bradly International Terminal at Los Angeles International Airport ("LAX"). *Id.* ¶ 11. Among those that Moment created is a 72 foot, 3 dimensional "Time Tower," on which videos are shown. *Id.*; Dkt. 20 at 8. The Time Tower is currently in use. *Id.* ¶ 14.

The FAC alleges that Moment's promotional materials describe the Time Tower as a "tribute to the silent era" designed to "brand the terminal as a destination." *Id.* ¶ 12. The video projection shown on the Time Tower is 87 minutes long. It is a compilation of 14 distinct, independent segments, each of which is between three and nine minutes long. The 14 segments include one called "Silent Movie," which is central to this action. It includes a scene in which a man is dangling from the hands of a large clock. The segments, with the corresponding portion of the 87-minute video stated, are as follows:

- Dancers in Clock (0:00-2:54): A large clock opens up, with women dancing inside.
- Waterfall (3:27-8:30): Water falls in slow motion down the sides of the Time Tower.
- Shadows (9:05-11:59): Shadow figures of travelers walking.
- Geometric Shapes (12:13-17:59, 21:15-24:25, 36:05-42:00): Lines move across the screen, making geometric patterns.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

- World Clock (18:02-21:15): Clocks move across the screen.
- Luggage (24:26-29:32): A collection of suitcases and trunks fills the screen. A butterfly, a red cloth, and a toy balloon fly across the screen.
- Silent Movie (30:00-32:55): A man wearing a black suit and a lighter rimmed hat is on the side of a large building, where various characters are seen in the windows, including a knight in shining armor, a monster reading a newspaper, a conductor and a socialite. The man is hitting a large clock with his umbrella. A woman is framed in the window below, watching him. The man loses his grip, his umbrella opens, and he floats slowly down to the bottom ledge of the building. Through a fade in, a police officer appears next to the man. They engage in a slapstick fight until an older woman hits the officer on the head with a frying pan. The man climbs back up the side of the building. While he is climbing, the woman who appeared previously in the window comes down to the bottom of the building. She looks up and sees that the man is back at its top ledge. The man grabs the hands of a clock that is on the outside of the building, and hangs from them for approximately 10 seconds. The man then releases his grip and floats downward into the arms of a cowboy who is standing at the first level of the building. The man and the cowboy dance together. Meanwhile, the woman who had appeared in the window has tied a group of sheets into a line. She holds one end of the sheets and throws the other end to the man. He grabs that end, and the woman pulls him up the side of the building and into her window. They embrace below the clock, as the scene ends.
- Gray Diamonds (33:00-36:00): Gray colored diamond shapes move across the screen.
- Petals (42:15-47:30): A field of roses appears, and then petals float into the air.
- Geometric Shapes II (48:30-56:50): Gray geometric shapes move across the screen.
- Foreign Locations (57:25-1:08:44): Various foreign locations, including the Big Ben, the Eiffel Tower and the Arc de Triomphe are shown.
- Morning Dew (1:09:20-1:14:39): Water droplets drip down the screen.
- Ink (1:15:21-1:20:26): A still life painting of an Asian location.
- Water (1:21:20-1:26:27): A tranquil scene of water.

Plaintiff alleges that in preparing the Silent Movie portion of this video, Moment created "pre-production stills," in which the scene is called the "Harold Lloyd tower theme." *Id.* ¶ 15; *see also id.* Ex. B (including various pre-production stills posted to a website by an artist who helped create the video). Plaintiff also alleges that it has been "approached by numerous members of the consuming public who, after seeing the Time Tower at LAX's International Terminal, have been expressly and explicitly deceived and confused into believing that Defendant's products and/or services are affiliated with Harold Lloyd and HLE . . . ." *Id.* ¶ 22.

### III.   Analysis

   A.   Legal Standard

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may bring a motion to dismiss a cause of action for a failure to state a claim. Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

    B.    Application

        1.    <u>First Cause of Action: Copyright Infringement</u>

            a)    Legal Standard

To establish copyright infringement, a claimant must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ's, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Proof of copying "involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar." *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (internal quotation marks omitted)).

Substantial similarity refers to "similarity of expression, not merely similarity of ideas or concepts." *Dr. Suess Enter., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997). Thus, only protected expression is relevant for purposes of assessing substantial similarity. *Funky Films*, 462 U.S. at 1077. Consequently, a court must "filter out and disregard the non-protectable elements in making [its] substantial similarity determination." *Id.* (internal quotation marks omitted). However, the "particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection." *Metcalf v. Bocho*, 294 F.3d 1069, 1074 (9th Cir. 2002).

The Ninth Circuit has established a two-part test to determine whether two works are substantially similar -- an extrinsic test that is to be followed by an intrinsic one. *Funky Films*, 462 U.S. at 1077. The extrinsic test is an objective comparison of specific expressive elements. It focuses on "articulable similarities

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works." *Id.* (internal quotation marks omitted). On a motion to dismiss, "courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of a jury." *Id.* However, if a plaintiff cannot satisfy the extrinsic test, there cannot be a finding of substantial similarity, regardless of whether the plaintiff can satisfy the intrinsic test. *Id.*

A claim may be stated even where the allegedly copied material constitutes only a small portion of the challenged work: "The whole picture need not be copies [sic] to constitute infringement. The mere copying of a major sequence is sufficient." *Univ. Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 361 (9th Cir. 1947); *see also Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.").

        b)      The Positions of the Parties

Defendant argues that, in evaluating the Motion under the substantial similarity test, it is necessary to compare all of *Safety Last* with all of the Time Tower video. When compared in this manner, Defendant argues that, as a matter of law, the two works are not substantially similar:

> HLE fails to make even a *prima facie* case of copyright infringement, as the Complaint does not bother to compare the two works as a whole, but only compares a roughly one minute portion of the 87 minute Time Tower video to an approximately one minute portion of Plaintiff's 73 minute movie.

Dkt. 20 at 18.

In support of this position, Defendant relies on decisions stating that the extrinsic test requires an objective comparison of specific expressive elements that focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works." *Funky Films, 462 U.S. at 1077*. Defendant argues that a comparison of these elements of the two works at issue in this action shows that they lack any material similarity:

> *Safety Last* is a silent film comedy that tells the story of Lloyd, who travels from Great Bend to the big city, gets a job at a department store, and engages in various slapstick comedic situations. He has a girlfriend whom he is trying to impress and, at the end of the movie, he climbs up the side of a building in order to obtain money so that he can marry her.
>
> The Time Tower video, in contrast, is best described as an abstract work of multimedia art. There is no plot to the Time Tower video; there are just various visual images (e.g., water, rose petals, luggage, foreign landmarks, etc.) The three minute "silent movie" segment of the Time Tower video has no real plot, and, other than the approximately seven seconds in which a character hangs from the clock hands, there are no other plot elements that are similar in the two works. It is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

> a tribute to the silent movie era, and contains many archetypes from the early days of motion pictures.

Dkt. 20 at 21.

In response, Plaintiff argues that "contrary to Defendant's assumptions, it is infringement of the Clock Scene (both as a [sic] audiovisual work and as captured in photographic stills) -- *not all of Safety Last!* -- that the FAC repeatedly claims to have been infringed." Dkt. 35 at 12. Plaintiff argues that a comparison of the entirety of each work is not required in making the determination whether the FAC states a cognizable claim for infringement:

> It is similarly irrelevant that Defendant took only part of Plaintiff's movie (the iconic Clock Scene) rather than the entirety and that the infringement is preceded and followed by dozens of minutes of unrelated depictions of morning dew, cascading waterfalls or geometric shapes. It is black-letter copyright law that one need not copy a whole movie to infringe it; the unauthorized taking of a major sequence is more than sufficient. *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) ("Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity.").

Dkt. 35 at 13.

        c)    Application

            i.    Legal Principles

*Universal Picture*s concluded that there was sufficient evidence of copyright infringement where Defendant "lifted almost bodily" from Plaintiff's film some "57 consecutive scenes," constituting 20% of Plaintiff's entire film. 162 F.2d at 360. This was deemed "not just the reproduction of an isolated single incident or event." *Id.* Accordingly, the court affirmed the judgment of infringement.

In *Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002), plaintiffs argued that illustrations in their copyrighted children's books were infringed by those used in other children's books. In reviewing an order granting defendants' motion for summary judgment, *Cavalier* began by comparing the entirety of each literary work, and concluded that this did not show substantial similarity. *Id.* at 825. The analysis then turned to a comparison of individual illustrations within the books, and concluded that a cognizable claim of infringement had been advanced:

> Even though we hold that the . . . stories, taken as a whole, do not infringe [Plaintiffs'] copyright, the question remains whether protected parts of [Plaintiffs'] works have been copied. *See Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 361 (9th Cir.1947) ("The whole picture need not be copied to constitute infringement. The mere copying of a major sequence is sufficient."). We therefore consider whether there exists a triable issue of substantial similarity between any of the isolated art work, as freestanding work divorced from the stories.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

*Id.* Based on a comparison of certain specific drawings in the works, the court concluded that a triable issue of fact was presented as to whether three of the illustrations reflected substantial similarly under the copyright infringement analysis. *Id.*

> ii. Factual Matters

Plaintiff does not argue that a comparison of the entirety of each of the works shows substantial similarity. Instead, Plaintiff argues that the clock tower scene from *Safety Last* is substantially similar to the clock tower scene in the Time Tower video. Accordingly, the question presented by the Motion is whether there are sufficient allegations as to substantial similarity between the identified segments of each work to state a claim of copyright infringement.

A comparison of the two scenes shows obvious similarities. Each features a high-rise stone building with a large clock on its façade. A man in a black suit and lighter rimmed hat interacts with a police officer and a female character who appears to be his romantic interest. In each the male character scales the side of the building and later dangles from the hands of a large clock that is attached to the building. Both scenes feature a rescue of the man with a rope or a make-shift line, and both conclude with a shot of the man and the woman who is his romantic interest embracing at a location near the top of the building. Still shots of the scene, included with Plaintiff's FAC, illustrate some of these similarities:

Harold Lloyd Clock Scene in "Safety Last!"     Moment Factory's Current Version of the "Harold Lloyd tower theme"

 

 

Dkt. 18 Exh. D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

The relevant scene in *Safety Last* lasts approximately seven minutes. It begins when Lloyd starts to climb the building and ends when he embraces his girlfriend on the rooftop. He hangs from a clock for approximately one minute. As noted, the entire film runs for 73 minutes. Accordingly, the entire scene represents approximately 10% of the entire film, and the portion in which Lloyd is hanging from the clock represents about 1%. Quantitatively, this is less than the infringement in *Universal Pictures*, where Defendant "lifted almost bodily" from Plaintiff's film some "57 consecutive scenes," constituting 20% of Plaintiff's entire film. 162 F.2d at 361. However, even if the copied portion is a relatively small portion of the entire work, if what has been copied is qualitatively important, a fact finder may conclude that there is substantial similarity between the two. *See Baxter*, 812 F.2d at 425. Here, Plaintiff alleges that the scene at issue is "one of the most iconic" images in cinema. Dkt. 18 ¶ 8. Taking Plaintiff's allegations as true, and considering the objective similarity in certain images of the two works, the FAC sufficiently alleges a claim of copyright infringement.

   d)  Fair Use Doctrine

    (1)  <u>Legal Standard</u>

The "fair use" of a copyrighted work by another does not constitute infringement. 17. U.S.C. § 107. The fair use doctrine "permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (internal quotation marks omitted). With respect to this defense, the statute provides:

> [T]he fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include -- (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

17. U.S.C. § 107.

The first factor in a fair use inquiry is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." *Id.* The central purpose of this inquiry is to determine "whether the new work merely supersede[s] the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579 (internal quotation marks and citations omitted). "Although such transformative use is not absolutely necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works." *Id.* (internal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

quotation marks and citations omitted). Such works "thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id.* (internal quotation marks and citations omitted).

The second factor considers "the nature of the copyrighted work," recognizing that "some works are closer to the core of intended copyright protection than others." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013) (internal quotation marks and citations omitted). "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Id.* (internal quotation marks and citations omitted).

The third factor addresses whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" are "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586.

The final factor weighs "the effect of the use upon the potential market for or value of the copyrighted work." 17. U.S.C. § 107. "It requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (internal quotation marks and citations omitted).

(2)     Application

Defendant argues that, even if there are sufficient allegations of substantial similarity between the two works, the infringement claim is barred as a matter of law by the Fair Use Doctrine. Plaintiff responds that resolution of the fair use defense raises factual issues that are not properly addressed through a motion to dismiss. It adds that even if the defense were considered, Defendant has failed to meet its burden of proving fair use.

The issues raised by the Fair Use Doctrine require the consideration and application of certain factual matters. There are material factual questions as to two elements of the fair use doctrine. First, the parties dispute whether the Time Tower video serves a transformative, rather than a commercial purpose. Second, the parties dispute the extent of market harm caused by the alleged infringement. Because these factual questions are presented, the Motion fails.

*          *          *

For all of the foregoing reasons, the Motion is **DENIED** as to the first cause of action for copyright infringement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

2.  Second Cause of Action: False Designation of Origin/False Endorsement, Lanham Act, 15 U.S.C. § 1125(a)

   a)  Legal Standard

Section 43(a) of the Lanham Act provides that a claim may be made against:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).

Section 43(a) "protects the public's interest in being free from consumer confusion about affiliations and endorsements, but this protection is limited by the First Amendment, particularly if the product involved is an expressive work." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013). "Recognizing the need to balance the public's First Amendment interest in free expression against the public's interest in being free from consumer confusion about affiliation and endorsement, the Second Circuit created the '*Rogers* test' in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir.1989)." *Id.* Under that test, Section 43(a) "will not be applied to expressive works 'unless the [use of the trademark or other identifying material] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the [use of trademark or other identifying material] explicitly misleads as to the source or the content of the work.'" *Id.* (quoting *Rogers*, 875 F.2d at 999) (alterations in original). Thus, a plaintiff alleging a violation of Section 43(a) as to an expressive work must show that the use of the mark either has no artistic relevance to the underlying work, or, if it does have any such relevance, the use of the mark explicitly misleads consumers as to the source or content of the work. The Ninth Circuit approved and adopted the *Rogers* test in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002). Whether the use has artistic relevance that explicitly misleads consumers presents legal issues that may be resolved on a motion to dismiss. *See Brown*, 724 F.3d at 1248 ("[Plaintiff] asserts that there is no artistic relevance and that [Defendant] attempted to mislead consumers about [Plaintiff's] involvement with Madden NFL, but none of the facts asserted in support of these legal conclusions actually justify the conclusions.").

False designation of origin and false endorsement are two separate claims. The Lanham Act prohibits any person from using any "false designation of origin" in connection with any goods or services in commerce that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

The Act also prohibits false endorsement based on the unauthorized use of the identity of a celebrity. Although "claims under § 43(a) generally relate to the use of trademarks or trade dress to cause consumer confusion over affiliation or endorsement," the Ninth Circuit has held that "claims can also be brought under § 43(a) relating to the use of a public figure's persona, likeness, or other uniquely distinguishing characteristic to cause such confusion." *Brown*, 724 F.3d at 1239. However, the Lanham Act "prohibits only *false endorsement*, not mere use of an image or name." *Hebrew Univ. of Jerusalem v. General Motors LLC*, 878 F. Supp. 2d 1021, 1035 (C.D. Cal. 2012) (internal quotation marks omitted) (emphasis in original). Accordingly, "[o]nly uses which suggest sponsorship or approval are prohibited." *Id.* (internal quotation marks omitted).

    b)  Application

Plaintiff alleges that Defendant's use of a character who resembles Lloyd and the clock scene constitute both false designation of origin and false endorsement under Section 43(a).

Both claims are barred under *Rogers*. Section 43(a) "does not apply to expressive works unless use of the mark either (1) has no artistic relevance to the underlying work; or (2) if it does have any artistic relevance, the use of the mark explicitly misleads as to the source or content of the work." *Rogers*, 875 F.2d at 999. The Time Tower video clearly constitutes an expressive work. Expressive works include artistic work such as books, plays, movies and videogames. *See Brown v. Entm't Merch. Ass'n*, 131 S.Ct. 2729 (2011). Further, the use of the Harold Lloyd and clock scene marks has at least some artistic relevance to the Time Timer video. *Brown* affirmed that "the level of [artistic] relevance [of the trademark or other identifying material to the work] merely must be above zero for the trademark or other identifying material to be deemed artistically relevant. This black-and-white rule has the benefit of limiting [a court's] need to engage in artistic analysis in this context." 724 F.3d at 1243. The scene from the video is, as Plaintiff alleges in the FAC, "a tribute to the silent era." Dkt. 18 ¶ 12. Any reference to the silent era film's clock tower scene -- described by Plaintiff as "one of the most iconic images in cinema" -- is artistically relevant to a tribute to silent movies. *Id.* ¶ 8.

Even if the use of identifying material is artistically relevant to the expressive work, the creator of the expressive work may have liability under the Lanham Act where the mark or material is used to "'explicitly mislead[] [consumers] as to the source or the content of the work.'" *Brown*, 724 F.3d at 1245 (quoting *Rogers*, 875 F.2d at 999). In *Brown*, a famous, retired professional football player, sued Electronic Arts in connection with its sale of the popular Madden NFL video games. Brown asserted claims based on the use of his likeness in these games. Because video games are expressive works, notwithstanding their commercial purpose, and because the use of Brown's likeness was not explicitly misleading, his Lanham Act claim was found to be barred by the First Amendment:

> It is key . . . that the creator must explicitly mislead consumers. "[T]he slight risk that . . . use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and [in cases where there is no explicit misleading] the Lanham Act is not applicable." This second prong of the Rogers test "points directly at the purpose of trademark law, namely to avoid confusion in the marketplace by allowing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

> a trademark owner to prevent others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner." We must ask "whether the [use of Brown's likeness] would confuse [Madden NFL] players into thinking that [Brown] is somehow behind [the games] or that [he] sponsors [EA's product]," and whether there was an "explicit indication," "overt claim," or "explicit misstatement" that caused such consumer confusion . . . .

*Id.* (internal citations omitted) (alterations in original).

Assuming all factual allegations in the FAC are true, and viewing them in a light most favorably to Plaintiff, Defendant's use of the Harold Lloyd and clock scene marks do not constitute an express attempt to suggest to consumers that Harold Lloyd endorsed the Time Tower video. Plaintiff argues that the Harold Lloyd and Clock Scene marks were infringed in two ways. First, by the Time Tower video, and then by the website, which included pre-production stills that refer to the scene at issue as the "Harold Lloyd tower theme." Neither of these has any explicitly misleading content, however.

The Time Tower video makes no direct reference to Harold Lloyd. Nor is there anything on the website that would mislead a person to believe that Harold Lloyd sponsored or endorsed the work. An artist who worked on the Time Tower video posted images of pre-production stills with the caption, "In 2012 I worked on the design of Moment Factory LAX time tower project. These are exemples [sic] of various concepts I illustrated in pre-production for the tower. . . . This was some example of design#storyboard [sic] made for the Harold Lloyd tower theme." Dkt. 18 Exh. B at 2-13.

"It is well established that the use of a mark alone is not enough to satisfy this prong of the *Rogers* test." *Brown*, 724 F.3d at 1245. If use of a mark alone were sufficient, "it would render *Rogers* a nullity." *Id.* (internal quotation marks omitted). In *Brown*, the Plaintiff relied on a consumer survey demonstrating that a majority of the public believed identifying marks in the Madden NFL video games could not be included in products without the permission of the person who held the marks. This was deemed insufficient to state a claim. Here, Moment Factory did not take any action that expressly suggested that Harold Lloyd had endorsed or sponsored the Time Tower video. Thus, even if it were determined that the Time Tower video used Lloyd's likeness, that use is protected by the First Amendment.

For these reasons, the Motion is **GRANTED** as to the second cause of action, with leave to amend if Plaintiff can in good faith allege additional facts sufficient to support the claim that the use explicitly misleads consumers.

      3.    <u>Third Cause of Action: Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200</u>

          a)    Legal Standard

Cal. Bus. & Prof. Code § 17200 is designed to protect consumers and competitors by "promoting fair competition in commercial markets for goods and services." *Duste v. Chevron Products Co.*, 738 F. Supp. 2d 1027, 1047 (N.D. Cal. 2010). The statute prohibits "any unlawful, unfair or fraudulent business

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | | Date | October 29, 2015 |
|---|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | | |

act or practice." Cal. Bus. & Prof. Code § 17200. This section "defines 'unfair competition' very broadly, to include 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 395 (1992)). "Each prong of the UCL is a separate and distinct theory of liability," thus the "unlawful," "unfair," and "fraudulent" prongs each offer "an independent basis for relief." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (citing *South Bay Chevrolet v. General Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 316 (1999)).

The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Latham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).

      b)     Application

Plaintiff alleges violations of the UCL based on the same conduct that supports its Lanham Act claims.[2] Because the Complaint fails to state any such actionable claims, it necessarily fails under the "unlawful" prong of the UCL. Moreover, the FAC fails to make any non-conclusory factual allegations regarding unfair or fraudulent business practices. Finally, Plaintiff may be deemed to have consented to this aspect of the Motion, because it failed to oppose it. Local Rule 7-12.

For the foregoing reasons, the Motion is **GRANTED** as to the third cause of action, with leave to amend if Plaintiff can in good faith assert additional facts sufficient to support a viable Lanham Act claim, or one that Defendant's actions were unfair or fraudulent.

    4.     Fourth Cause of Action: Unfair Competition, California Common Law

      a)     Legal Standard

"The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' ones goods as those of another. The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992).

      b)     Application

For reasons discussed above, Plaintiff has failed to allege facts sufficient to support a plausible claim that Defendant attempted to "pass off" the Time Tower film as *Safety Last*. Moreover, Plaintiff may be deemed to have consented to this aspect of the Motion, because it failed to oppose it. Local Rule 7-12.

---

[2] Plaintiff's UCL claim is based only on the alleged Lanham Act violations. The Copyright Act preempts a UCL claim based on Plaintiff's claims for copyright infringement. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212-13 (9th Cir. 1998) (citing 17 U.S.C. § 301(a)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-01556 JAK (MRWx) | Date | October 29, 2015 |
|---|---|---|---|
| Title | Harold Lloyd Entertainment, Inc. v. Moment Factory One, Inc., et al. | | |

For the foregoing reasons, the Motion is **GRANTED** as to the fourth cause of action, with leave to amend if Plaintiff can in good faith assert additional facts that, if established, would be sufficient to show that Defendant attempted to "pass off" the Time Tower film as *Safety Last*.

### IV.    Conclusion

For the reasons stated in this Order, the Motion to Dismiss is **GRANTED** as to the second, third, and fourth causes of action, and **DENIED** as to the first cause of action. Any amended complaint shall be filed on or before November 13, 2015.

**IT IS SO ORDERED.**

:

Initials of Preparer    ak